UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

IN THE MATTER OF THE SEARCHES OF

INFORMATION ASSOCIATED WITH KATHRYN.BAKER12@GMAIL.COM THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE LLC AND

INFORMATION ASSOCIATED WITH CLAYTONHOMESJB@YAHOO.COM THAT IS STORED AT PREMISES CONTROLLED BY OATH HOLDINGS, INC. (DBA "YAHOO")

Case No. 21-mj-5211-MAS

**Filed Under Seal**

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, David J. Lowery, Special Agent of the Federal Bureau of Investigation ("FBI"), being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.    I make this affidavit in support of applications for search warrants for information associated with the following accounts:

a. KATHRYN.BAKER12@GMAIL.COM, an account that is stored at premises owned, maintained, controlled, or operated by Google LLC ("Google"), headquartered at 1600 Amphitheater Parkway, Mountain View, California 94043; and

b. CLAYTONHOMESJB@YAHOO.COM, an account that is stored at premises owned, maintained, controlled, or operated by Oath Holdings, Inc. (d/b/a, and hereinafter, "Yahoo"), headquartered at 701 First Avenue, Sunnyvale, California 94089.

Specifically, the government seeks a warrant to review and seize information associated with Google's and Yahoo's respective e-mail platforms. The requested warrant would require Google and Yahoo (hereinafter also referred to as the "Providers"), an electronic communications services and/or remote computing service provider, to disclose to the government copies of information associated with the account listed above (hereinafter also referred to as the "Target Accounts"), more particularly described in Attachments A-1 (Yahoo) and A-2 (Google).

2.      This affidavit is made in support of an application for search warrants under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A), to require the Providers to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachments B-1 (Yahoo) and B-2 (Google). Upon receipt of the information described in Section I of Attachments B-1 and B-2, government-authorized persons will review that information to locate the items described in Section II of Attachments B-1 and B-2.

3.      I am a Special Agent of the Federal Bureau of Investigation (FBI), United States Department of Justice, and have been so employed since July 2011. I am currently assigned to the Lexington Resident Agency, within the Louisville Division of the FBI, and

am assigned to investigate white collar matters.  I have received training from the FBI Academy in Quantico, Virginia, which covered a variety of investigative techniques, including interviewing, report writing, and an overview of legal statutes and criminal laws.  I have personally conducted and assisted in investigations involving wire fraud, mail fraud, and bank fraud.

4.　　Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 371, 666(a)(1)(B) and (a)(2), 1341, 1343, 1346, and 1349 occurred involving the individuals identified below. Furthermore, there is probable cause to believe that the users of the email accounts kathryn.baker12@gmail.com and claytonhomesjb@yahoo.com used these accounts to communicate about matters related to possible violations of these statutes.  There is also probable cause to believe that a search of the information described in Attachments A-1 and A-2 will find evidence of these crimes, as further described in Attachments B-1 and B-2.

5.　　The matters set forth in this affidavit are either known personally to me or were related to me by other persons acting in their official capacities as law enforcement officers or employees of both domestic and foreign law enforcement agencies.  This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## JURISDICTION

6.     This Court has jurisdiction to issue the requested warrants because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).] The email providers discussed herein each provide customers an "electronic communication service" as that term is defined by 18 U.S.C. § 2510(12), and/or a "remote computing service" as that term is defined by 18 U.S.C. § 2711(2).

## PROBABLE CAUSE

7.     The FBI's investigation relates to a pardon granted to Patrick Baker, signed on December 6, 2019 by former Kentucky Governor Matthew G. Bevin, and a series of events preceding that pardon.  Based on my review of Kentucky state court records, in or about December 2017, Patrick Baker was sentenced to 19 years imprisonment following his conviction for reckless homicide, robbery, and impersonating a peace officer. Records obtained by the FBI from the current gubernatorial administration indicate that members of the Baker family submitted a formal pardon request to Governor Bevin's office in or about early July 2018.  The FBI's analysis of publicly available campaign finance records maintained by the Kentucky Registry of Election Finance ("KREF") determined that individuals identified as members, friends, and close associates of the Baker family made approximately $21,500 in contributions were made at a July 26, 2018 fundraiser.  Below is a nonexhaustive list of contributions made in connection with this

fundraiser. Where specified, the FBI established each individual's association with Patrick Baker through publicly available information, records and communications relating to Patrick Baker's previous imprisonment in state custody, and/or interviews of witnesses.[1]

     a.  John Baker, Patrick Baker's father, contributed a total of $2,000 at the July 26, 2018 fundraiser[2];

     b.  Jonathan Eric Baker, Patrick Baker's brother, contributed a total of $2,000 and co-hosted the July 26, 2018 fundraiser;

     c.  Kathryn ("Katie") Baker, Patrick Baker's sister-in-law through marriage to Jonathan Eric Baker, contributed a total of $2,000 (which included a $1,000 in-kind contribution) and co-hosted the July 26, 2018 fundraiser[3];

     d.  Victoria Baker, Patrick Baker's niece, contributed $1,000 at the July 26, 2018 fundraiser;

     e.  Kristal Doolin, Patrick Baker's cousin, contributed $1,000 at the July 26, 2018 fundraiser;

---

[1] According to KREF records, each contribution identified above was made to either the 2015 primary or 2015 general campaign. Because the contributions were made in 2018, the purpose was presumably to retire Governor Bevin's debts from the previous campaign. In some instances, individuals wrote contributions to both campaigns. In the list above, I include only the total contributions written by each individual at the fundraiser and do not distinguish between primary versus general election contributions.

[2] According to KREF records, at a March 23, 2019 event, John Baker also contributed $1,000 to Matt Bevin for the 2019 primary for governor.

[3] According to KREF records, at a March 23, 2019 event, Kathryn Baker also contributed $500 to Matt Bevin for the 2019 primary for governor.

f.  Dawn Turner, Patrick Baker's girlfriend at the time, contributed $500 at the July 26, 2018 fundraiser;

g.  Kandi Baker, Patrick Baker's cousin, contributed $500 at the July 26, 2018 fundraiser;

h.  Jerry Baker, Patrick Baker's uncle, contributed $1,000 at the July 26, 2018 fundraiser;

i.  Douglas Curdie, Patrick Baker's best friend[4], contributed $500 at the July 26, 2018 fundraiser;

j.  Thomas Smith, an acquaintance of John and Jackie Baker[5], contributed $1,000 at the July 26, 2018 fundraiser;

k.  Dinah Smith, wife of Thomas Smith, contributed a total of $2,000 at the July 26, 2018 fundraiser;

l.  Dustin Smith, son of Thomas Smith, contributed a total of $2,000 at the July 26, 2018 fundraiser;

m.  Kelly Bennett, Katie Baker's sister-in-law, contributed a total of $2,000 at the July 26, 2018 fundraiser;

---

[4] In his letter to Governor Bevin submitted as part of the pardon request packet, Douglas Curdie stated, "I have known Patrick Baker for over 25 years, he is my best friend…"

[5] In a December 9, 2020 interview with the FBI, Thomas Smith stated he does not know Eric and Katie Baker, but has known John and Jackie Baker for years.

8.     The FBI obtained financial records relating to many of these contributions through legal process directed to pertinent financial institutions.  The FBI's analysis of these records revealed that before the fundraiser, John, Jackie, and Kathryn Baker each obtained several thousand dollars in cash through withdrawals and the negotiation of at least one check issued from an account held by John and Jackie Baker.  The analysis also showed that several of the other July 26, 2018 contributors then wrote personal checks to the Bevin campaign and made contemporaneous or near-contemporaneous cash deposits in amounts that were equivalent or nearly equivalent to their contributions.  The FBI's analysis determined that this activity was consistent with a straw contribution scheme.  A further summary of the FBI's findings is below:

a.     Records provided by Community Trust Bank identified John Baker and Jackie Baker as owners of an account ending in 6228.  During July 2018, there were five cash withdrawal transactions totaling $7,250 occurring on July 6, July 9, July 11, July 23, and July 26.  Also, in July 2018, two checks dated July 12, 2018 were written to John Baker (Jonathan Eric Baker) and Katie Baker, for $4,000 and $5,000, respectively.  The check to John Baker (Jonathan Eric Baker) was deposited on July 25, 2018 into an account in the names of Jonathan Eric Baker and Katie E. Baker at L&N Federal Credit Union, and the check to Katie Baker was cashed on July 13, 2018 at Forcht Bank.  A check was written to "Matt Bevin for KY" from account 6228:

check# 9405, dated July 13, 2018 for $2,000, signed by John Baker.  The check debited account 6228 on July 31, 2018.

b.  Records provided by L&N Federal Credit Union identified Jonathan Eric Baker and Katie E. Baker as owners of an account ending in 6395. A deposit into account 6395 on July 25, 2018 included a $4,000 check from John Baker and Jackie Baker issued from Community Trust Bank account ending in 6228.  Two checks were written to "Matt Bevin for Kentucky" from account 6395: check# 8388, dated July 26, 2018 for $1,000 signed by Katie Baker; check# 8389, dated July 26, 2018 for $2,000, signed by Eric Baker.  Both checks were debited to the account on July 31, 2018.

c.  Records provided by L&N Federal Credit Union identified Victoria Baker and Katie Baker as owners of an account ending in 2164. There was a $1,000 cash deposit into account 2164 on July 25, 2018.  A check was written to "Matt Bevin for Kentucky" from account 2164:  check# 97, dated July 26, 2018 for $1,000, signed by Victoria Baker. The check debited account 2164 on July 31, 2018.

d.  Records provided by PNC Bank identified Terry Doolin II and Kristal Doolin as owners of an account ending in 2186. There was a $1,000 cash deposit into account 2186 on July 13, 2018.  A check was written to "Matt Bevin for KY" from account 2186:  check# 421, dated July 12, 2018 for

$1,000, signed by Kristal Doolin.  The check debited account 2186 on July 30, 2018.

e.  Records provided by PNC Bank identified Dawn Turner as the owner of an account ending in 7415.  There was an $800 cash deposit into account 7415 on July 13, 2018.  A check was written to "Matt Bevin for KY" from account 7415:  check# 212, dated July 13, 2018 for $500, signed by Dawn Turner.  The check debited account 7415 on July 30, 2018.

f.  Records provided by PNC Bank identified Kandi Baker as the owner of an account ending in 9965.  There was an $500 cash deposit into account 9965 on July 13, 2018.  A check was written to "Matt Bevin for KY" from account 9965:  check# 1296, dated July 15, 2018 for $500, signed by Kandi Baker.  The check debited account 9965 on July 30, 2018.

g.  Records provided by Commercial Bank identified Jerry Baker and Marlene Baker as owners of an account ending in 9901.  There was an $1,000 cash deposit into account 9901 on July 13, 2018.  A check was written to "Matt Bevin for KY" from account 9901:  check# 5382, dated July 14, 2018 for $1,000, signed by Jerry Baker.  The check debited account 9901 on July 31, 2018.

h.  Records provided by PNC Bank identified Douglas Curdie as the owner of an account ending in 3873.  There was an $300 cash deposit into account 3873 on August 2, 2018.  A check was written to "Matt Bevin for KY"

from account 3873:  check# 487, dated July 26, 2018 for $500, signed by

Douglas Curdie.  The check debited account 3873 on July 30, 2018.

i.   Records provided by PNC Bank identified Thomas Smith as owner of an

account ending in 8104. There was a $1,000 cash deposit into account 8104

on July 25, 2018.  A check was written to "Matt Bevin for KY" from

account 8104:  check# 3635, dated July 26, 2018 for $1,000, signed by

Thomas Smith.  The check debited account 8104 on July 30, 2018.

j.   Records provided by Commercial Bank identified Thomas Smith and

Dinah Smith as owners of an account ending in 6101.  There was an $2,000

cash deposit into account 6101 on July 25, 2018.  A check was written to

"Matt Bevin for KY" from account 6101:  check# 6726, dated July 26,

2018 for $2,000, signed by Dinah Smith.  The check debited account 6101

on July 31, 2018.

k.   Records provided by Forcht Bank identified Dustin Smith as owner of an

account ending in 9684.  There was an $2,000 cash deposit into account

9684 on July 27, 2018.  A check was written to "Matt Bevin for KY" from

account 9684:  check# 2803, dated July 26, 2018 for $2,000, signed by

Dustin Smith.  The check debited account 9684 on July 31, 2018.

l.   Records provided by L&N Federal Credit Union identified Anthony

Bennett and Kelly Bennett as owners of an account ending in 4905.  There

was a $2,000 cash deposit into account 4905 on July 16, 2018.  A check

was written to "Matt Bevin for KY" from account 4905: check# 6050, dated July 18, 2018 for $2,000, signed by Kelly Bennett.  The check debited account 4905 on July 31, 2018.

9.     On December 9, 2020, the FBI interviewed various individuals about the July 26, 2018 fundraiser and other events preceding the Baker pardon.  While several of these individuals denied participation in a straw contribution scheme,[6] two individuals admitted that members of the Baker family funded the contributions made in their names to the Bevin campaign.  Specifically:

   a.   Witness A identified Jackie Baker as Patrick Baker's mother.  Witness A informed the FBI that John and Jackie Baker asked Witness A to attend a July 26, 2018 fundraiser hosted by Eric and Kathryn Baker, and that Jackie Baker gave money to Witness A to pay for a contribution to the Bevin campaign made in Witness A's name.  At the July 26, 2018 fundraiser, Witness A observed Governor Bevin enter the home of Eric and Kathryn Baker to meet privately with Eric Baker, Kathryn Baker, John Baker, and Jackie Baker.  Witness A stated, based on personal belief, that the contributions made at that event were for the purpose of influencing Governor Bevin regarding a pardon for Patrick Baker.

---

[6]   For example, Kathryn Baker was questioned about specific checks that John and Jackie Baker wrote to her and her husband. She claimed she could not recall the purpose of those checks, suggested they may have been given to assist her in starting a business, and denied that the proceeds from these checks were used to fund contributions made in the names of other individuals.

b. Witness B informed the FBI that on a date in July 2018, a member of the Baker family gave cash to Witness B and asked Witness B to write a personal check to the Bevin campaign.  Witness B also attended the July 26, 2018 fundraiser.

10.    The FBI has also obtained records from the current Kentucky gubernatorial administration related to the Patrick Baker pardon.  These records included letters dated March 2018 and June 2018, in which Jackie Baker and John Baker respectively requested that Governor Bevin consider pardoning Patrick Baker.  These records also included email communications sent to and from Patrick Baker's Kentucky Department of Corrections email account about a variety of topics, some of which potentially related to the pardon application, based on their timing and content.  Summaries of pertinent emails between Patrick Baker and John, Kathryn, and Eric Baker are below.

a. A July 1, 2019 email from Eric Baker (jb2540@att.com) to Patrick Baker, which included the statement, "I want you to know we are still working diligently out here to get something done, so keep your chin up and keep the faith."

b. A July 10, 2019 email from Kathryn Baker (kathryn.baker12@gmail.com) to Patrick Baker, which included the statement, "We are doing all we can to help you."

    c.   An August 16, 2019 email from Kathryn Baker

        (kathryn.baker12@gmail.com) to Patrick Baker, which included the

        statement, "Know that we are doing all we can here for you."

    d.   A December 9, 2019 email from John Baker (claytonhomesjb@yahoo.com)

        to Patrick Baker, stating, "It's done, God gave us another chance!!  Call

        us."

11.    Through review of records obtained via legal process served on JPay, LLC,

the third-party service provider for Patrick Baker's Kentucky Department of Corrections

email account, the FBI identified the email accounts used to send the emails summarized

above.  Specifically, the email sent by Eric Baker was sent using the address

jb2540@att.com, the emails sent by Kathryn Baker were sent using the address

kathryn.baker12@gmail.com, and the email sent by John Baker was sent using the

address claytonhomesjb@yahoo.com.

12.    Pursuant to a court order, Google provided the FBI with records including

non-content information about communications sent or received by

kathryn.baker12@gmail.com, including the dates and times of the communications.

Those non-content records revealed a number of communications between

kathryn.baker12@gmail.com and eva@mattbevin.com during the periods immediately

before and after the fundraiser hosted by Eric and Katie Baker.  According to open-

source records, eva@mattbevin.com is believed to be an email address associated with

Eva Smith, who served as treasurer for Matt Bevin's Kentucky gubernatorial campaign. The dates, times, senders, and recipients of those communications follow:

| Date | Time | From | To |
|---|---|---|
| 12 Jun 2018 09:37:27 | kathryn.baker12@gmail.com | Eva@mattbevin.com |
| 12 Jun 2018 16:28:29 | Eva@mattbevin.com | kathryn.baker12@gmail.com |
| 12 Jun 2018 17:28:50 | kathryn.baker12@gmail.com | Eva@mattbevin.com |
| 12 Jun 2018 21:10:43 | Eva@mattbevin.com | kathryn.baker12@gmail.com |
| 13 Jun 2018 17:05:16 | kathryn.baker12@gmail.com | Eva@mattbevin.com |
| 13 Jun 2018 17:21:41 | Eva@mattbevin.com | kathryn.baker12@gmail.com |
| 14 Jun 2018 19:04:04 | kathryn.baker12@gmail.com | Eva@mattbevin.com |
| 14 Jun 2018 19:13:08 | Eva@mattbevin.com | kathryn.baker12@gmail.com |
| 19 Jun 2018 09:13:31 | kathryn.baker12@gmail.com | Eva@mattbevin.com |
| 19 Jun 2018 09:26:54 | Eva@mattbevin.com | kathryn.baker12@gmail.com |
| 19 Jun 2018 09:38:07 | kathryn.baker12@gmail.com | Eva@mattbevin.com |
| 19 Jun 2018 14:12:56 | kathryn.baker12@gmail.com | Eva@mattbevin.com |
| 19 Jun 2018 14:57:34 | kathryn.baker12@gmail.com | Eva@mattbevin.com |
| 20 Jun 2018 07:15:21 | Eva@mattbevin.com | kathryn.baker12@gmail.com |
| 20 Jun 2018 07:26:13 | Eva@mattbevin.com | kathryn.baker12@gmail.com |
| 20 Jun 2018 13:15:32 | kathryn.baker12@gmail.com | Eva@mattbevin.com |
| 20 Jun 2018 21:00:48 | Eva@mattbevin.com | kathryn.baker12@gmail.com |
| 21 Jun 2018 09:53:55 | kathryn.baker12@gmail.com | Eva@mattbevin.com |
| 14 Jul 2018 18:41:50 | kathryn.baker12@gmail.com | Eva@mattbevin.com |
| 16 Jul 2018 13:32:44 | Eva@mattbevin.com | kathryn.baker12@gmail.com |
| 19 Jul 2018 09:49:05 | Eva@mattbevin.com | kathryn.baker12@gmail.com |
| 23 Jul 2018 14:35:34 | Eva@mattbevin.com | kathryn.baker12@gmail.com |
| 26 Jul 2018 14:53:13 | kathryn.baker12@gmail.com | Eva@mattbevin.com |
| 27 Jul 2018 21:44:27 | kathryn.baker12@gmail.com | Eva@mattbevin.com |
| 30 Jul 2018 08:22:36 | Eva@mattbevin.com | kathryn.baker12@gmail.com |

13.     During an interview with the FBI on December 9, 2020, Kathryn Baker stated she communicated by email with someone with Matt Bevin's office regarding the fundraiser event.  Ms. Baker told the FBI that this individual initiated contact with the Bakers and asked them to host a fundraiser for the Bevin campaign.  Ms. Baker confirmed her account is a "Gmail" account, but when asked for the specific address, stated, "I'm not going to tell you because I know you're going to subpoena my emails."

14.     Based on Ms. Baker's statements in her interview, there is reason to believe that the contents of these communications will be relevant to the crimes under

investigation.  This conclusion is also based on the timing of certain of these communications.  For example, as discussed above, on July 13, 2018, Kathryn Baker cashed a $5,000 check written by John Baker.  The following day, the kathryn.baker12@gmail.com account was used to resume communication with the eva@mattbevin.com account after a lull of almost a month.  The kathryn.baker12@gmail.com account was also used to communicate with the eva@mattbevin.com account on July 30, 2018.  As discussed above, bank records reflect this as the clearing date for campaign contribution checks written by several other individuals, which were each likely funded with money that originated in an account owned by John and Jackie Baker.

15.     Additionally, the non-content records from Google revealed that kathryn.baker12@gmail.com was used to communicate with jb2540@att.com on numerous dates and times, some of which were interspersed with communications to and from eva@mattbevin.com, suggesting that certain of these communications are also pertinent to the crimes under investigation:

| Date | Time | From | To |
|---|---|---|
| 12 Jun 2018 20:53:41 | kathryn.baker12@gmail.com | jb2540@att.com |
| 12 Jun 2018 20:54:19 | kathryn.baker12@gmail.com | jb2540@att.com |
| 14 Jun 2018 13:35:25 | jb2540@att.com | kathryn.baker12@gmail.com |
| 20 Jun 2018 09:28:42 | kathryn.baker12@gmail.com | jb2540@att.com |
| 20 Jun 2018 13:01:27 | kathryn.baker12@gmail.com | jb2540@att.com |

Comparison of the two preceding tables reveals, for example, that kathryn.baker12@gmail.com was used to communicate with jb2540@att.com on the

afternoon of June 20, 2018 and then to communicate with eva@mattbevin.com approximately fourteen minutes later.

16.    Pursuant to a court order, Yahoo provided the FBI with records including non-content information about communications sent or received by claytonhomesjb@yahoo.com, including the dates and times of the communications. Those non-content records revealed a number of potentially pertinent communications during the periods immediately before and after the fundraiser hosted by Eric and Katie Baker.  The dates, times, senders, and recipients of those communications follow:

| Date | Time | From | To |
|---|---|---|
| 03 May 2018 8:15AM | claytonhomesjb@yahoo.com | JB2540@att.com |
| 12 Jun 2018 9:57PM | JB2540@att.com | claytonhomesjb@yahoo.com |
| 13 Jun 2018 10:27AM | claytonhomesjb@yahoo.com | JB2540@att.com |
| 30 Jun 2018 3:45PM | katie.baker2014@bellsouth.net | claytonhomesjb@yahoo.com |
| 30 Aug 2018 2:50PM | claytonhomesjb@yahoo.com | katie.baker2014@bellsouth.net |
| 03 Jul 2018 1:13PM | kristal.doolin@corbin.kyschools.us | claytonhomesjb@yahoo.com |
| 02 May 2018 12:25PM | claytonhomesjb@yahoo.com | dawn.turner@ky.gov |
| 05 Jul 2018 11:17AM | douglas.curdie@gmail.com | claytonhomesjb@yahoo.com |
| 05 Jul 2018 11:36AM | claytonhomesjb@yahoo.com | douglas.curdie@gmail.com |
| 27 Jul 2018 10:11PM | claytonhomesjb@yahoo.com | douglas.curdie@gmail.com |

17.    Each of the email accounts referenced in the table above is believed to be associated with an individual who made a contribution to the Bevin campaign during or in connection with the July 26, 2018 fundraiser and who made a corresponding deposit of cash into his or her bank account.  This includes the following:

a.  Based on records obtained from JPay, LLC (discussed above), the FBI has determined that jb2540@att.com is associated with Eric Baker.  As discussed in the preceding paragraphs, KREF records reflect that Baker contributed a total of $2,000 to the Bevin campaigns at the July 26, 2018 fundraiser.  Bank records revealed that Baker made this contribution in the form of a check that was dated July 26, 2018 and that debited Baker's account on July 31, 2018.  The same records reflected a $4,000 deposit into the same account on July 25, 2018, from a check drawn on an account held by John and Jackie Baker.

b.  Based on records obtained from Google through legal process, the FBI has determined that katie.baker2014@bellsouth.net is associated with Kathryn Baker.  Specifically, Google subscriber information identified katie.baker2014@bellsouth.net as the recovery email address for kathryn.baker12@gmail.com.  As discussed in the preceding paragraphs, KREF records reflect that Baker contributed a total of $2,000 to the Bevin campaigns at the July 26, 2018 fundraiser.  Bank records revealed that Baker made part of this contribution in the form of a check for $1,000, dated July 26, 2018, and which debited Baker's account on July 31, 2018. The same records reflected a $4,000 deposit into the same account on July 25, 2018, from a check drawn on an account held by John and Jackie Baker.

c.  The FBI believes that kristal.doolin@corbin.kyschools.us is associated with

Kristal Doolin of Barbourville, KY.  In her July 2, 2018 letter to Governor

Bevin, Ms. Doolin identified herself as a teacher from Knox Co.  As

discussed in the preceding paragraphs, KREF records reflect that Doolin

contributed $1,000 to the Bevin campaign at the July 26, 2018 fundraiser.

Bank records revealed that Doolin made this contribution in the form of a

check that was dated July 12, 2018 and that debited Doolin's account on

July 30, 2018.  The same records reflected a $1,000 cash deposit into the

same account on July 12, 2018.

d.  The FBI believes that dawn.turner@ky.gov is associated with Dawn Turner

of Manchester, KY.  In her July 4, 2018 letter to Governor Bevin, Ms.

Turner identified herself as an Adult Protective Service Worker with the

Cabinet for Health and Family Services.  Additionally,

dawn.turner@ky.gov was listed as the email address on the PNC Bank

account registration for Dawn Turner. As discussed in the preceding

paragraphs, KREF records reflect that Turner contributed $500 to the Bevin

campaign at the July 26, 2018 fundraiser.  Bank records revealed that

Turner made this contribution in the form of a check that was dated July 13,

2018 and that debited Turner's account on July 30, 2018.  The same records

reflected a $800 cash deposit into the same account on July 13, 2018.

    e.   The FBI believes that douglas.curdie@gmail.com is associated with Douglas Curdie of Lexington, KY, based on the user name affiliated with the account and the timing of the communication between John Baker's email account and this one.  As discussed in the preceding paragraphs, KREF records reflect that Curdie contributed $500 to the Bevin campaign at the July 26, 2018 fundraiser.  Bank records revealed that Curdie made this contribution in the form of a check that debited his account on July 30, 2018 and was followed by a $300 cash deposit into the same account on August 2, 2018.

18.    On March 31, 2021, the FBI submitted a preservation letter to Google requesting the preservation of all records pertaining to kathryn.baker12@gmail.com.  On March 5, 2021 and May 28, 2021, the FBI submitted a preservation letter to Yahoo requesting the preservation of all records pertaining to claytonhomesjb@yahoo.com.  In general, an email that is sent to either a Google or a Yahoo subscriber is stored in the subscriber's "mail box" on the email provider's servers until the subscriber deletes the email.  If the subscriber does not delete the message, the message can remain on the email provider's servers indefinitely.  Even if the subscriber deletes the email, it may continue to be available on the email provider's servers for a certain period of time.

## BACKGROUND CONCERNING EMAIL

19.     In my training and experience, I have learned that Google and Yahoo each provide a variety of on-line services, including electronic mail ("email") access, to the public.  Google and Yahoo each allow subscribers to obtain email accounts at their respective domain names (e.g., yahoo.com for Yahoo; gmail.com for Google), like the email accounts listed in Attachment A.  Subscribers obtain an account by registering with these email providers.  During the registration process, each email provider asks subscribers to provide basic personal information.  Therefore, the computers of Google and Yahoo each are likely to contain stored electronic communications (including retrieved and unretrieved email for their subscribers) and information concerning subscribers and their use of the provider's services, such as account access information, email transaction information, and account application information.  In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

20.     In my training and experience, email providers generally ask their subscribers to provide certain personal identifying information when registering for an email account.  Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number).  In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's

user or users.  Based on my training and my experience, I know that, even if subscribers insert false information to conceal their identity, this information often provides clues to their identity, location, or illicit activities.

21.     In my training and experience, email providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (*i.e.*, session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account.  In addition, email providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

22.     In my training and experience, in some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users.  Email providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. In my training

and experience, such information may constitute evidence of the crimes under

investigation because the information can be used to identify the account's user or users.

23.     As explained herein, information stored in connection with an email

account may provide crucial evidence of the "who, what, why, when, where, and how" of

the criminal conduct under investigation, thus enabling the United States to establish and

prove each element or alternatively, to exclude the innocent from further suspicion.  In

my training and experience, the information stored in connection with an email account

can indicate who has used or controlled the account.  This "user attribution" evidence is

analogous to the search for "indicia of occupancy" while executing a search warrant at a

residence.  For example, email communications, contacts lists, and images sent (and the

data associated with the foregoing, such as date and time) may indicate who used or

controlled the account at a relevant time.  Further, information maintained by the email

provider can show how and when the account was accessed or used.  For example, as

described below, email providers typically log the Internet Protocol (IP) addresses from

which users access the email account, along with the time and date of that access.  By

determining the physical location associated with the logged IP addresses, investigators

can understand the chronological and geographic context of the email account access and

use relating to the crime under investigation. This geographic and timeline information

may tend to either inculpate or exculpate the account owner.  Additionally, information

stored at the user's account may further indicate the geographic location of the account

user at a particular time (*e.g.*, location information integrated into an image or video sent

via email).  Last, stored electronic data may provide relevant insight into the email

account owner's state of mind as it relates to the offense under investigation. For

example, information in the email account may indicate the owner's motive and intent to

commit a crime (*e.g.*, communications relating to the crime), or consciousness of guilt

(*e.g.*, deleting communications in an effort to conceal them from law enforcement).

## **CONCLUSION**

24.     Based on the forgoing, I request that the Court issue the proposed search

warrants.

25.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer

is not required for the service or execution of these warrants.  The government will

execute these warrants by serving the warrants on Google and Yahoo, respectively.

Because the warrants will be served on the email providers, who will then compile the

requested records at times convenient to them, reasonable cause exists to permit the

execution of the requested warrant at any time in the day or night.

## **REQUEST FOR SEALING**

26.     I further request that the Court order that all papers in support of this

application, including the affidavit and search warrant, be sealed until further order of the

Court.  These documents discuss an ongoing criminal investigation that is neither public

nor known to all of the targets of the investigation.  Accordingly, there is good cause to

seal these documents because their premature disclosure may give targets an opportunity

to flee from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

Respectfully submitted,

**Signed remotely per FRCP 4.1.**

David J. Lowery
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on _____June 23, 2021_____, 2021

Honorable Matthew A. Stinnett
UNITED STATES MAGISTRATE JUDGE